# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THERMOFLEX WAUKEGAN, LLC, | ) |
| Plaintiff, | ) |
| | ) Case No. 1:21-cv-00788 |
| v. | ) |
| | ) Honorable John Z. Lee |
| MITSUI SUMITOMO INSURANCE USA, INC., | ) |
| Defendant. | ) |

## **THERMOFLEX'S STATEMENT OF MATERIAL FACTS**

Pursuant to Federal Rule of Civil Procedure 56(c) and Local Rule 56.1(a)(2), Plaintiff Thermoflex Waukegan, LLC ("Thermoflex") submits this statement of material facts in support of its Motion for Partial Summary Judgment (ECF 54), filed concurrently herewith.

### **The Parties**

1.  Thermoflex is a limited liability company with two members: Robert Price, a citizen of Illinois, and Deborah Price, a citizen of Colorado. Therefore, Thermoflex is a citizen of Illinois and of Colorado. *See* **Exhibit A**, Thermoflex's Answer to Mitsui Sumitomo's Counterclaim (ECF 22) at 2 ¶¶ 3-4.

2.  Defendant Mitsui Sumitomo Insurance USA, Inc. ("Mitsui") is a corporation domiciled in New York with its principal place of business in New York. Therefore, Mitsui is a citizen of New York. *See* Ex. A at 1-2 ¶ 2; **Exhibit B**, Mitsui Sumitomo's Answer to Thermoflex's Complaint, Affirmative and Additional Defenses, and Counterclaim (ECF 13) at 2 ¶ 4.

### **Jurisdiction and Venue**

3.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because

1

Thermoflex and Mitsui are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* Ex. A at 2 ¶ 5.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the claims that are the subject of this litigation arise from insurance contracts issued by Mitsui to Thermoflex in this judicial district. *See* Ex. A at 2 ¶ 6.

5. There exists an actual and justiciable controversy between the parties, which may be determined by a judgment or order of this Court. *See* Ex. A at 2 ¶ 7.

### **The Policies**

6. Mitsui issued to Thermoflex a series of commercial general liability policies under policy no. GL2122669, effective for consecutive annual periods from January 1, 2018 to January 1, 2020 (the "CGL Policies"). *See* **Exhibit C**, Policy no. GL2122669, Jan. 1, 2018 to Jan. 1, 2019 (ECF 1-1), at 2; **Exhibit D**, Policy no. GL2122669, Jan. 1, 2019 to Jan. 1, 2020 (ECF 15), at 2.

7. Mitsui also issued to Thermoflex a series of commercial excess and umbrella liability policies under policy no. UMB5700699, effective for consecutive annual periods from January 1, 2018 to January 1, 2020 (the "E/U Policies"). *See* **Exhibit E**, Policy no. UMB5700699, Jan. 1, 2018 to Jan. 1, 2019 (ECF 1-2), at 2; **Exhibit F**, Policy no. UMB5700699, Jan. 1, 2019 to Jan. 1, 2020 (ECF 16), at 2.

8. Through Coverage B of the CGL Policies, Mitsui agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We [Mitsui] will have the right and duty to defend the insured against any 'suit' seeking those damages." *See* Ex. C at 37 ¶ 1(a); Ex. D at 41 ¶ 1(a).

9. The CGL Policies provide coverage for "'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage

territory' during the policy period." *See* Ex. C at 37 ¶ 1(b); Ex. D at 41 ¶ 1(b).

10. The CGL Policies define "personal and advertising injury," in pertinent part, as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses: … (e) Oral or written publication, in any manner, of material that violates a person's right of privacy …." *See* Ex. C at 46 ¶ 14(E); Ex. D at 50 ¶ 14(e).

11. Through Coverage E of the E/U Policies, Mitsui agreed to pay on behalf of Thermoflex any "sums in excess of 'underlying insurance'" that Thermoflex becomes "legally obligated to pay as 'damages' to which this insurance applies." *See* Ex. E at 16-17 ¶ 1(a); Ex. F at 16-17 ¶ 1(a).

12. Coverage E of the E/U Policies provides coverage for

> "personal and advertising injury" that:
>
> a) arises out of an offense committed in the course of "your" business if the offense is committed:
>
>   (1) within the "coverage territory"; and
>   (2) during the policy period of this policy; and
>
> b) is covered by "underlying insurance" or that would have been covered by "underlying insurance" but for the exhaustion of "underlying insurance" "limits" by the payment of claims, settlements, or judgments[.]

*See* Ex. E at 17 ¶ 1(d)(2); Ex. F at 17 ¶ 1(d)(2).

13. The commercial general liability coverage under the CGL Policies is a scheduled underlying insurance agreement under the E/U Policies, with a policy limit of $1 million for personal and advertising injury and a $2 million aggregate limit. *See* Ex. E at 3; Ex. F at 3.

14. Through Coverage U of the E/U Policies, Mitsui agreed to pay on behalf of

3

Thermoflex any sums in excess of the self-insured retention or other applicable insurance that Thermoflex "becomes legally obligated to pay as 'damages' because of … 'personal and advertising injury' to which this insurance applies." *See* Ex. E at 24 ¶ 1(a); Ex. F at 24 ¶ 1(a).

15. The E/U Policies define "personal and advertising injury," in pertinent part, as injury arising out of the "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." *See* Ex. E at 14 ¶ 23(a)(3); Ex. F at 14 ¶ 23(a)(3).

16. The self-insured retention limit under the E/U Policies is $10,000. *See* Ex. E at 2, 15 ¶ 29; Ex. F at 2, 15 ¶ 29.

17. The "access or disclosure" exclusion in the CGL Policies provides, in relevant part:

> **A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:
> **2. Exclusions**
> This insurance does not apply to:
> **p.** **Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**
> Damages arising out of:
> **(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or
> **(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

*See* Ex. C at 55; Ex. D at 61.

18. The "data breach liability" exclusion in the E/U Policies excludes coverage for:

> any of the following:
> 1) "bodily injury", "property damage", or "personal and advertising injury" arising out of disclosure of or access to private or confidential information belonging to any person or organization; or
> 2) any loss, cost, expense, or "damages" arising out of damage to, corruption of, loss of use or function of, or inability to access, change, or

4

manipulate "data records".

*See* Ex. E at 52; Ex. F at 53.

## The *Gates* Class Action

19. On July 27, 2020, Gregory Gates, individually and on behalf of all others similarly situated, filed the putative class action captioned *Gregory Gates v. Thermoflex Waukegan, LLC, et al.*, Case No. 20 CH 00000479 in the Circuit Court of Lake County, Illinois ("*Gates*"). *See* **Exhibit G**, Class Action Complaint ([ECF 1-3](ECF 1-3)) at 10.

20. The defendants named in *Gates* are Thermoflex and TempsNow Employment and Placement Services, LLC ("TempsNow"). *See* Ex. G at 10.

21. The *Gates* complaint asserts claims on behalf of a putative class consisting of "[a]ll individuals … who had their handprints collected, captured, received, obtained, maintained, stored or disclosed by any Defendant during the applicable statutory period." *See* Ex. G at 21 ¶ 56.

22. The *Gates* complaint alleges that Thermoflex required temporary hourly workers staffed by TempsNow at Thermoflex, to use their handprints to clock in and clock out for attendance. *See* Ex. G at 11 ¶¶ 2-3, 17 ¶¶ 31-32, 19 ¶¶ 43, 46.

23. The *Gates* complaint alleges that TempsNow employees staffed at Thermoflex received their paychecks from TempsNow, and that Thermoflex transmitted the biometric timekeeping data for each of those workers to TempsNow. *See* Ex. G at 17 ¶ 33, 19 ¶ 44.

24. Gates alleges that Thermoflex and TempsNow obtained, stored and transmitted biometric timekeeping data attributable to hourly workers but did not comply with BIPA's consent and recordkeeping requirements. *See* Ex. G at 17-19 ¶¶ 30-41.

25. The *Gates* complaint does not allege that workers staffed by TempsNow at Thermoflex were Thermoflex employees. *See* Ex. G at 11 ¶¶ 2-3, 17 ¶ 33 and 19 ¶ 42.

### Mitsui's Denial of Coverage

26. Thermoflex tendered the *Gates* complaint to Mitsui, demanding a defense and indemnification against the claims asserted therein. *See* Ex. B at 10-11 ¶ 26.

27. Mitsui declined coverage. *See* Ex. B at 11-12 ¶¶ 33-34.

28. Thermoflex has undertaken its own defense against the claims asserted against it in *Gates* and incurred expenses, including attorney's fees, as a result. *See* Ex. B at 13 ¶¶ 38-39; **Exhibit H**, Court Case Details (electronic docket) for Case Number 20CH00000479, *Gates vs. Thermoflex Waukegan* (accessed May 6, 2022).

Dated: May 6, 2022

Respectfully submitted,

Thermoflex Waukegan, LLC

By: /s/ Carrie E. Davenport
      One of its attorneys

David B. Goodman – dg@glgchicago.com
Carrie E. Davenport – cd@glgchicago.com
  ARDC No. 6289322
Kalli K. Nies – kn@glgchicago.com
20 North Clark Street, Suite 3300
Chicago, Illinois 60602
Tel: (312) 626-1888

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2022, I caused a true and correct copy of the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which will send electronic notification to the parties and registered attorneys of record that the document has been filed and is available for viewing and downloading.

/s/ Carrie E. Davenport